IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JOHN CURTIS PAPENLEUR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:12cv126-WC |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

**I.     INTRODUCTION**

Plaintiff, John Curtis Papenleur, applied for supplemental security income benefits under Title XVI of the Act, 1381 *et seq*. His application was denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ issued a decision in which she found Plaintiff not disabled at any time through the date of the decision. The Appeals Council rejected Plaintiff's request for review of the ALJ's decision. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  The case

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

is now before the court for review under 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. 15); Def.'s Consent to Jurisdiction (Doc. 14). Based on the court's review of the record and the briefs of the parties, the court AFFIRMS the decision of the Commissioner.

## II.   STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920 (2006).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1? [the Listing of Impairments]

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

2

> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g., Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981).

Vocational Guidelines[4] (grids) or call a vocational expert (VE).  *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience.  Each factor can independently limit the number of jobs realistically available to an individual.  *Phillips*, 357 F.3d at 1240.  Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id*.

The Court's review of the Commissioner's decision is a limited one.  This Court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  *See also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence.").  A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ.  *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings.  . . .  No

---

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

> similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.   ADMINISTRATIVE PROCEEDINGS

Plaintiff was 19 years old at the time he filed his application and had a high school education. Tr. 22 & 119. Plaintiff had no past relevant work experience. Tr. 22. Following the administrative hearing, and employing the five-step process, the ALJ found Plaintiff "has not engaged in substantial gainful activity since February 1, 2010, the alleged onset date." (Step 1) Tr. 12. At Step 2, the ALJ found that Plaintiff suffers from the following severe impairments: "ADHD; impulse control disorder; conduct disorder; disruptive behavior disorder; mood disorder; major depressive disorder, recurrent, moderate; history of bipolar disorder; upper-end borderline intellectual functioning; history of neglect and sexual abuse of child (allegedly both as victim and perpetrator); history of disorder of written expression; and noncompliance with medical treatment, the latter of which constitutes a separate and independent basis for denial of benefits." *Id*. The ALJ then found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)." *Id*. Next, the ALJ found that Plaintiff "has no physical impairments or restrictions," but mentally, has the RFC "to perform less than the full range of work at all

exertional levels," with several nonexertional limitations.  Tr. 14.  The ALJ then concluded that transferability of job skills was not a factor because Plaintiff did not have past relevant work.  (Step 4) Tr. 22.  At Step 5, the ALJ found that, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity," and after consulting with a VE, "there are jobs that exist in significant numbers in the national economy that the claimant can perform."  Tr. 22.  The ALJ identified the following occupations as examples:  "small parts assembler," "hand packager," and "general utility worker."  Tr. 23.  Accordingly, the ALJ determined that Plaintiff had not been under a disability from the alleged onset date, through the date of the decision.  *Id*.

## IV.   PLAINTIFF'S CLAIMS

Plaintiff presents two issues for this court's consideration in review of the ALJ's decision:  1) "Whether the ALJ erred in failing to find the Claimant disabled under Listing 12.08 for a personality disorder"; and 2) "Whether the ALJ erred in finding that the Claimant's non-compliance with medical treatment constituted a separate and independent basis for denial of benefits."  Pl.'s Br. (Doc. 11) at 8.

## V.   DISCUSSION

### A.   *Whether the ALJ erred in failing to find the Claimant disabled under Listing 12.08 for a personality disorder.*

Plaintiff argues that he meets the listing under 12.08 for Personality Disorder. Listing 12.08 of 20 CFR, Part 404, Subpart B, Appendix I, reads as follows:

12.08 Personality disorders: A personality disorder exists when personality traits are inflexible and maladaptive and cause either significant impairment in social or occupational functioning or subjective distress. Characteristic features are typical of the individual's long term functioning and are not limited to discrete episodes of illness. The required level of severity for these disorders is met when the requirements in both A and B are satisfied.

    A.    Deeply ingrained, maladaptive patterns of behavior associated with one of the following:
        1.    Seclusiveness or autistic thinking; or
        2.    Pathologically inappropriate suspiciousness or hostility; or
        3.    Oddities of thought, perception, speech and behavior; or
        4.    Persistent disturbances of mood or affect; or
        5.    Pathological dependence, passivity, or aggressivity; or
        6.    Intense and unstable interpersonal relationships and impulsive and damaging behavior;

AND

    B.    Resulting in at least two of the following:
        1.    Marked restriction of activities of daily living; or
        2.    Marked difficulties in maintaining social functioning; or
        3.    Marked difficulties in maintaining concentration, persistence, or pace; or
        4.    Repeated episodes of decompensation, each of extended duration.

Plaintiff asserts that he meets this listing and the requirements of both paragraphs A and B. With regards to "paragraph A" of the listing, Plaintiff lists his various diagnoses, including the severe impairments found by the ALJ, and cites to some in-house treatments. Pl.'s Br. (Doc. 11) at 9-10. Plaintiff also points the court to his own and his mother's testimony regarding his condition. *Id.* However, whether he meets the

requirements of "paragraph A" is irrelevant to the ALJ's decision, because the ALJ found that Plaintiff did not meet the listing because he could not satisfy the "paragraph B" requirements.  The ALJ found that "[b]ecause the claimant's mental impairments do not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration, the 'paragraph B' criteria are not satisfied." Tr. 14.  Thus, the ALJ found that Plaintiff did not meet the listing.

With regard to the "paragraph B" requirements, Plaintiff argues that he does suffer "a 'marked' restriction of activities of daily living, marked difficulties in maintaining social functioning and marked difficulties in maintaining concentration, persistence, or pace."  Pl.'s Br. (Doc. 11) at 10.  In other words, Plaintiff asserts that he meets 3 of the 4 requirements of "paragraph B."   In support, Plaintiff points to the opinion of Dr. Rodriguez and his opinion of Plaintiff's ability to interact with the general public.  *Id*.  Plaintiff also points to his own testimony regarding his activities of daily living, arguing that his:

> "daily ritual of going to bed around 11:30 p.m. or midnight and arising at 1:00 p.m. the following day after which he eats and plays video games until bedtime is further evidence of a marked restriction of activities of daily living. The Claimant's difficulty in maintaining concentration, persistence or pace is evidenced by his inability to stay on task, complete a project, and hold a job for more than a couple of days."

*Id*.

With regard to Dr. Rodriguez, the doctor did opine, in the Mental Residual Functional Capacity Assessment, that Plaintiff was "markedly limited" in his ability to interact appropriately with the general public. Tr. 349. This however, is a different diagnostic than the three criteria in "paragraph B." In each of those areas, Dr. Rodriguez specifically found that Plaintiff suffered only moderate limitations. Tr. 344. Thus, Dr. Rodriguez's opinion directly supports the ALJ's findings.

With regard to his own testimony of daily living, the ALJ discounted the limiting nature of those activities in light of the other medical evidence of record. Tr. 21. Indeed, the ALJ considered the opinions of Drs. Rodriguez, Brantley, and McKeown and other medical evidence of record in determining that Plaintiff did not meet the listing. Plaintiff does not attack that evidence, or the substance of the ALJ's findings, and fails to point the court to evidence of record in support of a finding that he met the listing. The court finds the ALJ's determination to be without error and Plaintiff's argument to be without merit.

### B.   *Whether the ALJ erred in finding that the Claimant's non-compliance with medical treatment constituted a separate and independent basis for denial of benefits.*

Arguing that the ALJ improperly considered Plaintiff's non-compliance with medical treatment, Plaintiff states that "there was no evidence, much less substantial evidence, from a treating physician that the Claimant would be able to work if he followed the recommended treatment of his treating physician" and that he lacked transportation to seek treatment. Pl.'s Br. (Doc. 11) at 11.

An ALJ can rely on a failure to seek medical treatment in making a finding of not disabled. However, if non-compliance is the sole factor, an ALJ should consider financial inability. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). As in *Ellison*, the ALJ's decision here did not rest entirely on non-compliance. In fact, the ALJ specifically stated that non-compliance was a separate and independent basis for a finding of not disabled. The primary basis was that Plaintiff's "subjective, self-serving limitations and those of the claimant's non-medical witnesses . . . exceeded those found by the qualified medical professionals." Tr. 22. Thus, the ALJ's decision was based on the medical evidence of record. Therefore, even were the court to find the non-compliance finding to be error, the ALJ's decision would still stand.

Moreover, the issue is not whether there is evidence "from a treating physician that the Claimant would be able to work if he followed the recommended treatment of his treating physician," the issue is whether there is evidence to support Plaintiff's contention that he cannot work. "[T]he claimant bears the burden of proving that [he] is disabled, and, consequently, [he] is responsible for producing evidence in support of [his] claim." *Ellison*, 355 F.3d at 1276. The medical evidence in this case supports the ALJ's determination of not disabled and the court finds Plaintiff's argument to be without merit.

## VI.   CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons given above, the decision of the Commissioner is AFFIRMED. A separate judgment will issue.

Done this 9th day of September, 2013.

> /s/ Wallace Capel, Jr.
> WALLACE CAPEL, JR.
> UNITED STATES MAGISTRATE JUDGE